136 P.3d 223

**P.M., Petitioner,**

v.

**The Honorable Andrew GOULD, Judge of the Superior Court of the State of Arizona, in and for the County of Yuma, Respondent Judge,**

**Charles Frederick Moore; State of Arizona ex rel. Jon R. Smith, Yuma County Attorney, Real Parties in Interest.**

No. 1 CA–SA 05–0207.

Court of Appeals of Arizona, Division 1, Department C.

May 23, 2006.

Crime Victim's Legal Assistance Project By Keli B. Luther and William Montgomery, Tempe, Attorneys for Petitioner.

Kristi A. Riggins, Payson, Attorney for Charles Frederick Moore.

Jon R. Smith, Yuma County Attorney By Stephen Kiholm, Deputy County Attorney, Yuma, for Real Parties in Interest.

## OPINION

IRVINE, Presiding Judge.

¶ 1 This special action presents the following issue: whether the State's interest in securing an aggravated punishment at a sentencing hearing and the defendant's due process rights justify the trial court's order to disclose the victim's privileged communications with a counselor. For the reasons discussed below, the trial court should reconsider the competing interests in this case in light of *State v. Martinez*, 210 Ariz. 578, 115 P.3d 618 (2005) (holding that the jury need only find a single aggravating factor to subject a defendant to an aggravated sentence). The counselor's records may be disclosed, and the counselor ordered to testify, only if the State shows that the information sought is essential to proving that an aggravated sentence should be imposed.

## FACTS AND PROCEDURAL HISTORY

¶ 2 A.M. is a victim of sexual assault who suffers from cerebral palsy. Her mother, Petitioner P.M., seeks relief on A.M.'s behalf.

¶ 3 A jury convicted A.M.'s father, Defendant Charles Frederick Moore, of four counts of sexual conduct with a minor and four counts of sexual assault. The trial court found an aggravating factor, emotional harm to the victim, Arizona Revised Statutes ("A.R.S.") section 13–702(C)(9) (Supp.2005), and sentenced Defendant to an aggravated term of twenty-five years' imprisonment.

¶ 4 The United States Supreme Court subsequently held that a jury must find all facts, other than a prior conviction, that expose the defendant to a sentence greater than the statutory maximum. *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). On Defendant's *Blakely* motion, the trial court ordered resentencing for a jury to consider the aggravating factors.

¶ 5 The State contends that it will seek to prove the following aggravating factors during the resentencing proceedings: (1) A.M. was a "disabled person" per A.R.S. § 13–702(C)(13);[1] (2) Defendant committed the offense in a child's presence per A.R.S. § 13–702(C)(18);[2] (3) Defendant committed sexual offenses in the past against his sister, and his sister-in-law, per A.R.S. § 13–702(C)(11); (4) Defendant committed the prior offenses in the presence of a child; (5) Defendant abused his position of trust when he committed the sexual offenses against his daughter, A.M., per A.R.S. § 13–702(C)(23) (catchall provision); and (6) the emotional harm to the victim, per A.R.S. § 13–702(C)(9).

¶ 6 The State informed Defendant that it would call the victim, her mother, and the victim's counselor as witnesses to prove the emotional harm aggravator. Defendant's counsel asked the court to order disclosure of the victim's private counseling records so she could prepare her interview of the counselor. The State agreed that the victim's counseling records should be disclosed to Defendant.

¶ 7 Petitioner sought to protect the victim's privacy by preventing production of the victim's counseling records. In response, the State recommended that the trial court conduct an in camera review of the records and disclose any relevant records to Defendant. Defendant's counsel agreed that the in camera inspection would effectively balance the competing interests in this case. Prior to the court's ruling on the motion, the State informed the court that the victim objected to the production of her counseling records.

---

1. Arizona Revised Statutes § 13–702(C)(13) includes a cross-reference to A.R.S. § 38–492 (2001), which defines "disabled person" as "an individual who has a physical or mental impairment that substantially limits one or more major life activities of the individual or who has a record of such an impairment or is regarded as having such an impairment."

2. A.M.'s brother was present during the offense.

¶ 8 The trial court granted Defendant's motion to produce the victim's counseling records for an in camera review. Because the court found the emotional harm aggravator at the original sentencing, the trial court concluded that this finding effected a waiver of the victim's privilege. The trial judge said, "[b]y putting that into the record, the privilege as to relevant records has been waived." Neither party had requested the counseling records at the original sentencing proceeding, and the court found the aggravating factor without any disclosure of the victim's counseling records.

¶ 9 Petitioner then retained counsel who filed a motion to reconsider. In a telephonic conference, the court warned Petitioner that if the victim insisted on refusing to disclose her counseling records, "then the victim was jeopardizing the allegation of emotional harm and making it likely that the Defendant would not receive an aggravated sentence." Petitioner's counsel disagreed and asserted that the State could prove this aggravator without disclosure of the victim's counseling records.

¶ 10 On July 8, 2005, the trial court entered an order denying the motion to reconsider and affirming its prior order mandating disclosure of the records for an in camera review. The order included the following findings relating to the victim:

> [T]he state intends to call the victim and the victim's counselor to prove the aggravating factor of emotional harm; ... the state has acknowledged that the counselor may rely upon the victim's counseling records in rendering testimony at the sentencing trial; ... [the state has alleged that] the victim's counseling records may be, in whole or in part, related to the emotional harm the victim allegedly suffered ...; [a]lthough the victim seeks to preclude disclosure of her counseling records, she has not, through counsel, expressed an intention to withdraw the allegation of emotional harm as an aggravating factor; ... the victim's counseling records are privileged ...; the victim may waive this privilege by pursuing a course of conduct inconsistent with the observance of the privilege ...; [and] the

victim has a state constitutional right to refuse disclosure of her [privileged] counseling records.

¶ 11 The court explained that Defendant's due process right includes the right to obtain information "essential to the preparation of a defense." Further, the court added, when the victim's counselor-patient privilege is at odds with the defendant's due process rights, "the defendant's due process right is the 'superior right.'" The trial court recognized that Defendant does not have an unlimited right to disclosure. Rather, it is the duty of the trial court to determine which records are exculpatory and essential to a defense, via an in camera inspection. Finally, the court concluded that conducting an *"in camera* review properly balances the constitutional rights of the victim and the defendant." In response to the court's order, Petitioner filed this special action.

## JURISDICTION

¶ 12 When a party asserts a privilege against a discovery order, special action jurisdiction lies because the party has "no equally plain, speedy, or adequate remedy by appeal." *State v. Brown,* 210 Ariz. 534, 537, ¶ 5, 115 P.3d 128, 131 (App.2005) (citing Ariz. R.P. Spec. Act. 1(a)). The present inquiry is whether the trial judge erred by issuing the disclosure order. Because an appeal will not afford the parties a timely and adequate remedy, we accept jurisdiction and grant relief in part, as explained below. The standard of review for the legal issues raised is de novo. *Brown,* 210 Ariz. at 538, ¶ 7, 115 P.3d at 132.

## DISCUSSION

¶ 13 Defendant first challenges Petitioner's standing to bring this special action on behalf of the victim in this case, who is Petitioner's daughter. Arizona Revised Statutes § 13–4403 (2001) permits the parent of a minor or a vulnerable adult to assert the victim's rights on behalf of the victim. Alternatively, a victim who is emotionally or physically unable to assert his or her rights may designate a representative to exercise those rights for the victim. A.R.S. § 13–4403.

The State represented to the trial court that A.M. had designated her mother as her representative. The trial court found and entered into the record that Petitioner "has standing ... [to] invoke the victim's rights under the Victim's Bill of Rights, Article 2, Section 2.1 of the Arizona Constitution, pursuant to A.R.S. § 13–4403(A) (designation of victim representative), A.R.S. § 13–4437(A) (standing of victim), and Rule 39(c)(4), *Arizona Rules of Criminal Procedure* (right of victim to be represented by counsel)." There is no evidence that the trial court erred. Therefore, we agree that Petitioner has standing to raise these issues.

¶ 14 The central issue in this case is how to properly reconcile the sometimes conflicting interests of the State, defendant and victim in the sentencing portion of a criminal prosecution. Under Arizona law, crime victims have certain enumerated rights to participation, information, and respectful treatment in criminal proceedings. For example, a victim has a right "[t]o refuse an interview, deposition, or other discovery request by the defendant." Ariz. Const. art. 2, § 2.1(A)(5). Further, "[t]he victim shall ... have the right to the assistance of the prosecutor in the assertion of the rights enumerated in this rule or otherwise provided for by law." Ariz. R.Crim. P. 39. Also, "[v]ictims' rights are not restricted to sentencing proceedings conducted by the court. They must also be provided for in sentencing proceedings that are constitutionally required to be undertaken by a jury." *State ex rel. Romley v. Dairman*, 208 Ariz. 484, 488, ¶ 10, 95 P.3d 548, 552 (App.2004).

¶ 15 Victims also may assert certain privileges intended to protect their confidential communications. In this case, the relevant privilege is created by statute for communications between a patient and a behavioral health professional. A.R.S. § 32–3283 (Supp.2005). On occasion, however, the rights of a victim have been forced to yield to the duties of the State in prosecuting wrongdoers and the rights of the criminal defendant to defend against such prosecutions.

¶ 16 In *S.A. v. Superior Court*, 171 Ariz. 529, 831 P.2d 1297 (App.1992), we held that a victim cannot refuse to testify at a criminal trial involving the crime alleged to have been committed against her. After acknowledging the defendant's right to confront the witnesses against him, we recognized that "society's interest in justice would be jeopardized" by allowing the victim to refuse to testify. *Id.* at 531, 831 P.2d at 1299. As we explained:

> [T]he Victims' Bill of Rights should not be a "sword in the hands of victims" to thwart the prosecution of a wrongdoer. In this case, the petitioner is the critical, and perhaps only, witness. By refusing to testify, perhaps by having succumbed to pressure from the accused's family, she has attempted to usurp the discretion given to the prosecution and to the grand jury in their charging decisions.

*Id.* at 532, 831 P.2d at 1300 (quoting *State ex rel. Romley v.Super. Ct. in and for the County of Maricopa (Roper)*, 172 Ariz. 232, 241, 836 P.2d 445, 454 (App.1992)).

¶ 17 We have also held that a victim in a domestic violence prosecution cannot "impede a criminal prosecution by refusing to release medical records necessary for the prosecution of the defendant." *Benton v.Super. Ct.*, 182 Ariz. 466, 468, 897 P.2d 1352, 1354 (App.1994). Considering a statutory physician-patient privilege similar to the behavioral health profession privilege at issue here, we cited with approval a Washington decision finding "that the public policy mandating prosecution of criminals is more compelling than the physician-patient privilege." *Id.* "[The privilege] should not ... become a means whereby criminal activities of third persons may be shielded from detection, prosecution, and punishment, however magnanimous, compassionate or conciliatory the victim might otherwise wish to be." *Id.* (quoting *State v. Boehme*, 71 Wash.2d 621, 430 P.2d 527, 536 (1967)). *But see State v. Wilson*, 200 Ariz. 390, 26 P.3d 1161 (App. 2001) (distinguishing *Benton;* holding that physician-patient privilege barred disclosure of records of criminal defendant accused of worker's compensation fraud).

¶ 18 A defendant's rights may also conflict with a victim's rights. It is well-

accepted that "if, in a given case, the victim's state constitutional rights conflict with a defendant's federal constitutional rights to due process and effective cross-examination, the victim's rights must yield." *State v. Riggs*, 189 Ariz. 327, 330, 942 P.2d 1159, 1162 (1997), citing *Roper*, 172 Ariz. at 236, 836 P.2d at 449.

¶ 19 *Roper* involved a defendant accused of aggravated assault. 172 Ariz. at 234, 836 P.2d at 447. The defendant's husband allegedly suffered from multiple-personality disorder. *Id.* The defendant claimed that she stabbed her husband in self-defense because he "was manifesting one of his violent personalities." *Id.* To prove her defense, the defendant sought disclosure of the victim's medical records. *Id.* This court ordered disclosure of the records for an in camera review, stating:

> [I]f the court determines that the medical records are exculpatory and are essential to presentation of the defendant's theory of the case, or necessary for impeachment of the victim relevant to the defense theory, then the defendant's due process right to a fundamentally fair trial ... overcomes the statutory physician patient privilege ... just as the due process right [can overcome] the Victim's Bill of Rights.

*Id.* at 239, 836 P.2d at 452.

¶ 20 Here, in weighing Defendant's interests in disclosure, the trial court properly followed an analysis similar to the one in *Roper*. We agree with the trial court's conclusion that, if the victim's counselor is to be called as a witness, the counselor's records that are relevant to her testimony should be examined in advance by the court in camera and possibly disclosed to Defendant.

¶ 21 We believe, however, that the real issue in this dispute is not between the victim and Defendant, but between the victim and the State. The root of this dispute is not Defendant's demand for the counselor's records but the State's decision to call the counselor as a witness to support its claim of emotional harm to the victim. Petitioner has focused her arguments on the records, but we interpret her objection to disclosing the documents as encompassing all of the communications between the victim and her counselor, including the counselor's records of those communications. Because the statutory privilege applies to the counselor's testimony as well as to the counselor's written records, we must initially determine if the counselor may be compelled to testify at all.

¶ 22 In reviewing the record provided to us, it appears that the trial court assumed the interests of the State in calling the counselor and in obtaining her records were so strong that they will always outweigh the privacy interests of the victim. We disagree. An important distinction between this case and *S.A.* and *Benton* is that those cases involved trials at which the defendants' guilt was the issue. The outcome would determine whether the defendant would be held accountable for alleged criminal actions. *S.A.* and *Benton* found that the information was necessary to the prosecution because the possible consequences of not having the information were so severe, i.e., a guilty party going free, that the balancing of interests between the State and the victim always tilted toward the interests of society as represented by the State.

¶ 23 This case, however, addresses a sentencing proceeding; guilt or innocence is no longer at issue. Rather, the sole purpose for calling the victim's counselor as a witness, or obtaining the records, is to determine whether Defendant spends more than the presumptive twenty years in prison. The trial court originally gave Defendant an aggravated sentence of twenty-five years. The State's interest in this matter is, therefore, not whether a criminal defendant will be held accountable and punished, but whether the punishment will be twenty or twenty-five years.

¶ 24 We recognize the importance of this interest. The State has a significant interest in ensuring the imposition of a just penalty, and the State informs us that in this case "aggravated prison sentences are appropriate and that less severe sentences would be an injustice." We conclude, however, that in weighing a victim's rights to confidentiality against the State's interests in proving its case, the State's interest in proving an aggravating factor for sentencing purposes is not

as strong as it is for determining guilt. Even if the State fails to prove a *Blakely*-compliant aggravating factor, Defendant will not go free. In the absence of mitigating factors, he will be sentenced to the punishment set by the legislature as the presumptive sentence for the crimes he committed. Although this sentence may be increased if certain aggravating factors are present, a longer sentence is not automatic and will occur only after the trial court considers any aggravating factors and weighs them against any mitigating factors. *See* A.R.S. § 13–702.

 ¶ 25 Moreover, the State's interest in proving any particular aggravating factor is diminished by the fact that not all aggravating factors must be found by a jury or proven beyond a reasonable doubt. After *Blakely*, this court split as to how aggravating factors must be proven. One line of cases held that if a defendant admits or a jury finds at least one aggravating factor, the defendant becomes eligible to receive an aggravated sentence and the trial court may consider additional facts not found by the jury. *See, e.g., State v. Martinez,* 209 Ariz. 280, 100 P.3d 30 (App.2004). Thus, "a jury need not find *every* aggravator upon which a sentencing judge relies." *Id.* at 282, ¶ 1, 100 P.3d at 32. Other cases held that the sentencing judge may only consider aggravating factors found by a jury. *See, e.g., State v. Munninger,* 209 Ariz. 473, 104 P.3d 204 (App.2005). The supreme court resolved this split in *Martinez,* holding that an aggravated sentence may be imposed even if one or more aggravating factors relied upon by the sentencing judge is not proven to a jury beyond a reasonable doubt.

¶ 26 Without the benefit of the supreme court's decision in *Martinez,*[3] the trial court apparently accepted the line of cases holding that all aggravating factors must be found by a jury. The trial court stated:

> [O]nce you get into the—the sentencing range above the presumptive, that you have the elements of these offenses that Mr. Moore was convicted on, and an additional element of emotional harm to the

victim or whatever the aggravating factor is; and I don't think that the Court, given what the Supreme Court has said about that, can interpret it any other way than it is an element of the offense. It has to be treated like an element of the offense.

> That means a jury trial, and that means all the protections that go with a trial on the original charges; all the protections that go with any trial on the elements of the crime would apply now to any aggravating factor used to increase the range above the presumptive prison sentence.

The trial court later informed the parties of the importance it placed on the emotional harm aggravating factor, and its comments indicate that the court assumed this factor must be found by a jury.

> Now, if the State withdraws that aggravating factor, and the emotional harm to the victim is not an aggravating factor, it may well be these records are a nonissue, but I caution Counsel on this: When I sentenced this defendant, that was the main aggravating factor; and I'm not saying that a jury wouldn't find other aggravating factors, and I'm not saying that an aggravated sentence wouldn't be possible.

> It may well be, but the end result of this could well be that that aggravating factor is not presented, and the—this defendant may be limited to a presumptive sentence on all counts.

Following this reasoning, the trial court assumed that the State's interest in proving each aggravating factor was equivalent to its interest in proving each element of the underlying offense.

 ¶ 27 In *Martinez,* however, our supreme court decided that a single *Blakely*-compliant aggravating factor will expose a defendant to an aggravated sentence. Once the door is open to an aggravated sentence, the trial court may consider other factors that are not *Blakely*-compliant.

> The Sixth Amendment requires that a jury find beyond a reasonable doubt, or a defendant admit, any fact (other than a prior

---

**3.** *Martinez* was filed by the Arizona Supreme Court the same day the trial court issued its main ruling in this dispute. Therefore, it is not surprising that the trial court did not decide the effect of *Martinez* on its analysis.

conviction) necessary to establish the range within which a judge may sentence the defendant. If, however, additional facts are relevant merely to the exercise of a judge's discretion in determining the specific sentence to impose on a defendant *within* a given statutory sentencing range, the Sixth Amendment permits the judge to find those facts by a preponderance of the evidence. Under A.R.S. § 13–702, the existence of a single aggravating factor exposes a defendant to an aggravated sentence. Therefore, once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the maximum prescribed in that statute.

210 Ariz. at 585, ¶ 26, 115 P.3d at 625.[4] The effect of the supreme court's ruling on this case is that, if any other aggravating factor is *Blakely*-compliant, the sentencing judge may still consider the emotional harm to the victim for sentencing purposes even if that factor is not found by a jury beyond a reasonable doubt.

¶ 28 In this case, the State has alleged six aggravating factors. The State argues that the emotional harm factor is easier to prove and less likely to be overturned on appeal than the other alleged aggravating factors, and also that the counselor's testimony may be necessary to prove the allegation.

By far the most persuasive, and the one the trial court relied on in imposing aggravated sentences, is the claim that defendant caused severe emotional harm to the victim. The State is concerned that the remaining allegations may not be supported in fact when presented to a jury at re-sentencing, or that an appellate court may find the allegations to be legally improper.

. . . .

Assuming, however, the records are disclosed and [A.M.] does testify, the State will call [the counselor] as a witness to support [A.M.'s] claims. As this Court is aware, [A.M.] suffers from a mental disability. Her disability may prevent her from effectively informing the jury at re-sentencing of the emotional harm she suffered due to defendant's criminal conduct. [A.M.'s] testimony will likely be very upsetting to her. [The counselor] may be a crucial witness in proving beyond a reasonable doubt to a jury the allegation of emotional harm.

Significantly, the State never argues that the counselor's testimony is essential to its case, only that she "may be" a crucial witness.[5]

■ ¶ 29 *Roper* held that a defendant may gain access to medical information "essential" to her defense. 172 Ariz. at 240, 836 P.2d at 453. We believe the State must meet a similar burden here. The victim's statutory right to keep her counselor's testimony and the related records confidential should not be set aside merely because doing so will make it easier for the State to prove an aggravating factor. Only if the State establishes that the information is essential to obtaining an aggravated sentence should the court order the disclosure.

■ ¶ 30 Any number of factors may weigh in the balance in determining whether the counselor's testimony is essential. We do not attempt to provide a comprehensive list, but several factors appear particularly suited to this case. First, the likelihood that the State can convince a jury to find emotional harm beyond a reasonable doubt based on other evidence should be weighed against its need for the victim's confidential information. The State may not want to risk failure in proving the aggravating factor, but the vic-

---

4. The supreme court also noted that its ruling was consistent with the legislature's post-*Blakely* amendments to the sentencing statutes. *Id.* at n. 4. Arizona Revised Statutes § 13–702 now states: "If the trier of fact finds at least one aggravating circumstance, the trial court may find by a preponderance of the evidence, additional aggravating circumstances."

5. Nothing in the record before us supports the claim that the victim will refuse to testify. The Petition addresses only the counselor and her records. Therefore, we do not address the consequences, if any, of such a refusal.

tim's rights should not be forced to yield simply to make the State's job easier.

¶ 31 Second, the trial court should weigh the State's ability to prove one or more other aggravating factors. If it seems likely that one or more other factors can be proven to a jury, there is little reason to order the disclosure of the victim's confidential information simply to prove a separate aggravator that, under *Martinez,* need not be proven beyond a reasonable doubt. The trial court may still consider the emotional harm to the victim as an aggravating factor if the State proves it by a preponderance of the evidence. Given that the trial court previously found the emotional harm aggravating factor under a preponderance standard, no additional evidence may even be necessary.

¶ 32 Third, the trial court may balance the likelihood of an aggravated sentence against the harm to the victim of disclosure. If the trial court anticipates that it will not impose an aggravated sentence even if aggravating factors are proven, or the aggravation will be minimal, the trial court may conclude that disclosure of the information is not essential. As a part of this analysis, the trial court may consider the unique aspects of the case that affect whether anything less than an aggravated sentence would be unjust. For example, in one of the oral arguments before the trial court, Defendant's counsel informed the court that Defendant had been diagnosed with early onset Alzheimer's. Defendant's health and/or age may make the difference between a twenty-year and twenty-five year sentence meaningless. The trial court may take this into account in weighing whether the confidential information is essential to the case. *See also State v. Cooper,* 166 Ariz. 126, 130, 800 P.2d 992, 996 (App.1990) (noting that a "defendant's health is a factor to be considered at sentencing").

¶ 33 Applying these factors, we can conceive of several scenarios in which ordering the victim's counselor to testify is not essential to the State's argument that an aggravated sentence should be imposed. Nevertheless, because we do not have a complete record and lack the trial court's familiarity with the case and parties, we will not decide the issue. The trial court is best situated to balance the interests at stake.

¶ 34 The trial court also found that the counselor's records may be essential to the cross-examination of the victim. It appears from the record, however, that the primary reason Defendant requested the records was to cross-examine the counselor. None of the trial court's cited factual findings in its order separately addressed Defendant's need for the records to impeach the victim. It is unclear whether the trial court would have ordered disclosure if Defendant's only need was to impeach the victim. Therefore, we conclude that the trial court also should reconsider its order regarding the use of the records to cross-examine the victim.

¶ 35 Finally, the trial court stated that the finding of emotional harm at the original sentencing resulted in the victim waiving her privilege as to any relevant records. In ordering the disclosure, the trial court also found that, "[a]lthough the victim seeks to preclude disclosure of her counseling records, she has not, through counsel, expressed an intention to withdraw the allegation of emotional harm as an aggravating factor." In essence, the trial court is treating the victim as a party to the prosecution. As our decisions in *S.A.* and *Benton* show, however, a victim is not a party to a criminal case and does not exercise the control over its conduct which could support a finding of waiver.

¶ 36 The State controls which aggravators are alleged and how they are to be proven. Although a victim's acquiescence in the State's decision to drop an allegation of a particular aggravating factor may make it easier for the State to justify doing so, the State, nonetheless, is responsible for how the case is charged and ultimately proven. The victim has not waived her rights, or placed her medical or behavioral health conditions at issue, merely because she testifies as a witness. *See Wilson,* 200 Ariz. at 396, ¶ 17, 26 P.3d at 1167 ("This case, however, does not present such a scenario in which implied

waiver must be found.... [T]he State, not Wilson, sought to call Krasner as a witness and placed Wilson's medical condition at issue in this case.").[6]

## CONCLUSION

¶ 37 We accept jurisdiction and grant the following relief: we order the trial court to reconsider its earlier orders and determine if the State has shown that the victim's counseling records or the counselor's testimony are essential to the State's efforts to have the defendant receive an aggravated sentence. In doing so, the trial court should balance the victim's constitutional right to refuse a discovery request and her claim of privilege against the State's interest in calling the counselor as a witness to prove the emotional harm aggravating factor. In evaluating the weight of the State's interest, the trial court may consider that, pursuant to *Martinez,* the prosecutor needs to prove only one aggravating factor beyond a reasonable doubt to the jury, and that the prosecutor has alleged six aggravating factors. The trial court should also reconsider its finding that disclosure of the counselor's records is necessary to cross-examine the victim.

CONCURRING: MAURICE PORTLEY and JOHN C. GEMMILL, Judges.

---

**6.** We also disagree with the State's assertion in its response to the special action petition that "[p]resumably any embarrassment to [A.M.] from disclosure of therapy records is no greater than the embarrassment she experienced when she testified in the guilt phase at trial about the details of defendant's sexual offenses." The details of the offenses are known to Defendant and others. Communications with a counselor after-the-fact may address facts, emotions and issues known only to the victim and her counselor. Their disclosure constitutes a separate, and possibly greater, embarrassment.